UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LANCE NELSON, MICHELE NELSON, and CN and MN, by their next friends and legal guardians, Lance Nelson and Michele Nelson, | ) ) ) ) |
| Plaintiffs, | ) ) CASE NO. 3:10-cv-00097-RL-CAN |
| v. | ) ) |
| TEXTRON, INC., | ) ) |
| Defendant. | ) |

## AMENDED COMPLAINT

Plaintiffs, Lance Nelson, Michele Nelson, and CN and MN, by their next friends and legal guardians, Lance Nelson and Michele Nelson (collectively referred to as "Nelsons"), bring this action against Defendant, Textron, Inc. ("Textron") under Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §9607(a), for the recovery of costs incurred by Plaintiffs necessary to respond to the release caused by Textron.  In addition to Plaintiffs' common law tort claims and declaratory relief, Plaintiffs also bring an action under Indiana's Environmental Legal Action ("ELA") statute, I.C. §13-30-9, based on Textron having caused and/or contributed to the release of hazardous substances at the Site.

In support of their Amended Complaint, Plaintiffs state:

### PARTIES, JURISDICTION, VENUE

1. The Nelsons are Indiana residents who reside on approximately 6.87 acres located at 4403 N. Old U.S. Highway 31, Rochester, Fulton County, Indiana ("Nelson Property").

2. CN and MN are the children of Lance and Michele Nelson, both of whom have resided with their parents at the Nelson Property since birth.

3. Textron is a Delaware corporation registered with the Indiana Secretary of State to conduct business in the state of Indiana and with its principal place of business in Rhode Island.

4. Textron has owned and operated a fastener manufacturing facility at the real property located at 4366 N. Old U.S. Highway 31, Rochester, Fulton County, Indiana ("Site").

5. The Site and the Nelson Property are located in Fulton County, Indiana.

6. The Nelsons filed their Complaint against Textron on March 11, 2010 in Fulton Circuit Court.

7. On March 19, 2010, Textron removed the civil action to federal court.

8. The United States District Court for the Northern District of Indiana has jurisdiction over this case as a result of diversity of citizenship pursuant to 28 U.S.C. §1332 insofar as the Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, attorneys' fees and costs.

9. Venue is proper in the United States District Court for the Northern District of Indiana in accordance with 42 U.S.C. §9613(b).

## FACTS APPLICABLE TO ALL COUNTS

10. The Nelson Property is located east of – and adjacent to – the Site.

11. The Nelsons purchased the Nelson Property in 1995.

12. Upon information and belief, Textron has owned and operated a fastener manufacturing facility at the Site from 1954 until 2006. In 2006, Textron sold the Site to Acument Global Technologies, but Textron retained environmental liability.

13. During its ownership and operation of the fastener facility located at the Site, Textron utilized trichloroethylene ("TCE").

14. During its ownership and operation of the fastener facility at the Site, Textron allowed, caused, and/or contributed to the release of substances into the surface and subsurface of the Site, including the groundwater. Among other substances, Textron has released and/or allowed TCE and its degradation products including but not limited to, cis-1,2-dichlorethene ("cis-1,2-DCE") and vinyl chloride ("VC"), to emanate from the Site (collectively referred to as "Contaminants").

15. Since approximately 1986, Textron had knowledge of the Contaminants on the Site and the possibility of migration – or actual migration of – the Contaminants off the Site.

16. Since approximately 1986, Textron had knowledge of the mobility of the Contaminants in groundwater at the Site, and Textron knew the groundwater flow direction on the Site was to the east - southeast.

17. Environmental investigations conducted for and by Textron as well as the Indiana Department of Environmental Management ("IDEM") have revealed the presence of Contaminants off-Site as far as approximately 1 mile from the Site.

18. Upon information and belief, and despite knowing or having reason to know that Contaminants had migrated from its Site, Textron did not sample the Nelson Property until approximately 2008 in response to a demand from IDEM.

19. Upon information and belief, the Contaminants are present on the Nelson Property.

20. On November 19, 2008, IDEM issued a "Special Notice of Liability" to Textron due to its release of Contaminants at the Site. A true and accurate copy of IDEM's November 19, 2008 letter is attached hereto as Exhibit 1.

21. As a result of the Contaminants, the Nelsons retained an environmental consultant, SeaBreeze Technologies ("SeaBreeze"). The Nelsons have incurred costs for services provided by SeaBreeze.

22. The Nelsons' sole water supply, including the source of their drinking water, is a well on the Nelson Property. The Nelsons do not have access to a municipal drinking water supply.

23. The Nelsons also utilize their well for agricultural purposes.

24. The Nelsons engage in recreational activities on the Nelson Property, including but not limited to, hunting, gardening, and hiking.

25. The Contaminants disposed at the Site have contaminated and will continue to contaminate the soil and groundwater. Groundwater contaminated with the Contaminants has flowed and will continue to flow so as to contaminate the Nelson property.

26. Textron's release of the Contaminants presents an imminent and substantial endangerment to the health and welfare of persons near the Site, including the Nelsons, and to the environment.

### COUNT I
### ENVIRONMENTAL LEGAL ACTION STATUTE

27. The Nelsons incorporate paragraphs 1 through 26 as though fully set forth herein.

28. Pursuant to I.C. § 13-30-9-2, a person may bring an environmental legal action against a person who caused or contributed to the release of a hazardous substance into the

surface or subsurface soil or groundwater that poses a risk to human health and the environment to recover reasonable costs.

29. Textron is classified as a "person" under the meaning of that term defined at I.C. §13-11-2-158.

30. The Contaminants released by Textron at the Site and those substances now impacting the Nelson Property constitute "hazardous substances" pursuant to I.C. §13-11-2-98.

31. Through Textron's actions with respect to the Contaminants, Textron caused and/or contributed to the release of hazardous substances into the subsurface soil and groundwater of the Site and off-site properties, including the Nelson Property, thereby posing a risk to human health and the environment.

32. Through Textron's inactions with respect to the Contaminants, Textron caused and/or contributed to the release of hazardous substances into the subsurface soil and groundwater of the Site and off-site properties, including the Nelson Property, thereby posing a risk to human health and the environment.

33. Pursuant to I.C. § 13-30-9-3, this Court is authorized to award the Nelsons response costs in addition to a reasonable attorney fee incurred in bringing this action.

34. The Nelsons have incurred reasonable costs relating to the release of the Contaminants, including attorney fees in bringing this action, and they will continue to incur an undetermined amount of costs in order to completely remediate the Contaminants on the Nelson Property and adjudicate this action.

## COUNT II
## TRESPASS

35. The Nelsons incorporate paragraphs 1 through 34 as though fully set forth herein.

36. Textron's failure to address the Contaminants on the Site and the Contaminants' migration onto the Nelson Property substantially interfere with the Nelsons' right to exclusive use, enjoyment, and possession of the Nelson Property.

37. Textron's actions in causing and/or allowing the Contaminants to migrate onto the Nelson Property are without legal justification.

38. Textron's omissions in causing and/or allowing the Contaminants to migrate onto the Nelson Property are without legal justification.

39. The Nelsons never consented to Textron's release of the Contaminants onto the Nelson Property.

40. As a direct and proximate result of Textron's trespass upon the Nelson Property, the Nelsons have suffered damages, including but not limited to, diminution in value of the Nelson Property and lost use and enjoyment of the Nelson Property (including discomfort and annoyance).

## COUNT III
## NUISANCE

41. The Nelsons incorporate paragraphs 1 through 40 as though fully set forth herein.

42. Textron's failure to address the Contaminants on the Site and the Contaminants' migration onto the Nelson Property are injurious to health, indecent, offensive to the senses, and an obstruction to the free use of the Nelson Property.

43. Therefore, Textron's failure to address the Contaminants on the Site and the Contaminants' migration onto the Nelson Property constitute a nuisance pursuant to I.C. §32-30-6-6.

44. As a direct and proximate result of the continuing nuisance unleashed by Textron, the Nelsons have suffered and continue to suffer damages, including but not limited to,

diminution in value of the Nelson Property and lost use and enjoyment of the Nelson Property (including discomfort and annoyance).

45. Pursuant to I.C. §32-30-6-6, the Nelsons are entitled to commence an action to enjoin such nuisance and to recover damages as proximately caused by such nuisance.

## COUNT IV
## NEGLIGENCE

46. The Nelsons incorporate paragraphs 1 though 45 as though fully set forth herein.

47. During its ownership and operation at the Site, Textron had a duty to control and maintain the Site and its operations in a safe manner.

48. Textron had a duty to not allow its substances, including Contaminants, to be released into the environment, and to promptly respond to any release of such substances in a manner that would prevent further migration of the Contaminants onto other property including, but not limited to, the Nelson Property.

49. Textron has breached these duties by its negligent acts and omissions in operating and maintaining the Site, by its failure to implement safeguards to assure against the release of Contaminants, by its failure to promptly and effectively address the release of same, and by its failure to prevent further migration of the Contaminants onto the Nelson Property.

50. Textron knew or should have known that the release of Contaminants would migrate onto the Nelson Property and contaminate the Nelson Property.

51. Textron knew or should have known that the release of Contaminants has the potential to cause harm to human health and the environment.

52. As a direct and proximate result of Textron's breaches of its duties, the Nelsons have suffered and continue to suffer damages, including but not limited to, diminution in value

of the Nelson Property and lost use and enjoyment of the Nelson Property (including discomfort and annoyance).

## COUNT V
## NEGLIGENCE PER SE

53. The Nelsons incorporate paragraphs 1 through 52 as though fully set forth herein.

54. The release of the Contaminants and the failure to address the Contaminants by Textron constitute an unexcused and unjustified violation of a duty prescribed by statute, regulation, or ordinance including, but not limited to, a violation of the Environmental Legal Action Statute (ELA), I.C. §13-30-9, Indiana Anti-Dumping Statute, I.C. §13-30-3-13(d), the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. 6901 et seq.; and the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. 9601 et seq.

55. The breaches of the above-referenced statutory duties are the proximate cause of injury to the Nelsons.

56. The violations of the statutes impose liability upon Textron.

57. As a direct and proximate result of Textron's breaches of its duties, the Nelsons have suffered and continue to suffer damages, including but not limited to, diminution in value of the Nelson Property and lost use and enjoyment of the Nelson Property (including discomfort and annoyance).

## COUNT VI
## DECLARATORY JUDGMENT PURSUANT TO INDIANA CODE 34-14-1

58. The Nelsons incorporate paragraphs 1 through 57 as though fully set forth herein.

59. An actual, substantial, legal controversy now exists between the Nelsons and Textron. Accordingly, the Nelsons seek a judicial declaration of their rights and legal relations with Textron pursuant to I.C. §34-14-1. The Nelsons contend that Textron is liable for the

damages caused by the Contaminants and that Textron is obligated to reimburse the Nelsons for their past and future costs relating to the Contaminants, as well as attorney fees.

60. A declaratory judgment is appropriate for numerous reasons, including the following:

    a. A declaratory judgment will prevent the need for multiple lawsuits as the Nelsons incur costs relating to ongoing migration of the Contaminants onto and over the Nelson Property, costs for which Textron is liable. The declaratory judgment will provide a final resolution of the issues between the Nelsons and Textron regarding liability for said costs.

    b. The public interest will be served in that a declaratory judgment will ensure an environmentally proper and expeditious response to the Contaminants impacting the Nelson Property, and such response will be equitable given the source of the release.

61. Accordingly, the Nelsons are entitled to declarations that:

    a. Textron is liable for the Contaminants on the Nelson Property, including the remediation of the Contaminants and restoring the Nelson Property to its uncontaminated state.

    b. Textron will reimburse the Nelsons for any costs they incur relating to the Contaminants on the Nelson Property.

    c. Textron is liable for attorney fees and court costs arising from the Contaminants on the Nelson Property.

    d. Textron is liable for all damages caused to the Nelsons as a result of the Contaminants, including but not limited to, diminution in value of the

Nelson Property and lost use and enjoyment of the Nelson Property (including discomfort and annoyance).

## COUNT VII
## CERCLA §107

62. The Nelsons incorporate paragraphs 1 through 61 as though fully set forth herein.

63. The Site has and continues to constitute a "facility" as defined by 42 U.S.C. §9601(9).

64. The Contaminants classify as "hazardous substances" as defined by 42 U.S.C. §9601(14).

65. Textron is a "person" as defined by 42 U.S.C. §9601(21).

66. Textron is a responsible party due to its ownership and operation during the time of the disposal of hazardous substances, including Contaminants, at the Site pursuant to 42 U.S.C. §9607(a)(2).

67. During the period in which it controlled the Site and the disposal of Contaminants occurred, Textron was an "owner" and "operator" of the Site as defined by 42 U.S.C. §9601(20).

68. Textron is a responsible party due to its arranging for the disposal and/or treatment of hazardous substances, including Contaminants, which were owned and possessed by Textron pursuant to 42 U.S.C. §9607(a)(3).

69. Textron handled, used, stored, and disposed of hazardous substances, including Contaminants, and waste, on the Site.

70. Textron leaked, discharged, and otherwise released hazardous substances, including Contaminants, and waste into the environment at the Site.

71.     The actions of Textron with regard to the hazardous substances, including Contaminants, and waste constitute a "release" and "disposal" of hazardous substances at the Site within the meaning of 42 U.S.C. §9601(22) and 42 U.S.C. §9601(29).

72.     Textron is jointly and severally liable under 42 U.S.C. §9607(a)(2) because it owned and operated the Site at the pertinent times when hazardous substances, including Contaminants, were disposed into the environment.

73.     Textron is jointly and severally liable under 42 U.S.C. §9607(a)(3) because it arranged for the disposal of hazardous substances, including Contaminants, owned and/or possessed by Textron.

74.     As a direct and proximate result of the releases by Textron of hazardous substances, including Contaminants at the Site, the Nelsons have incurred environmental response costs.

75.     All costs that the Nelsons have incurred in responding to the Contaminants are consistent with the National Contingency Plan ("NCP") within the meaning of 42 U.S.C. §9607(a).

### COUNT VIII
### WILLFUL AND WANTON MISCONDUCT

76.     The Nelsons incorporate paragraphs 1 through 75 as though fully set forth herein.

77.     Textron has acted in a wanton and willful manner and in reckless indifference to the safety and health of the Nelsons and their use and enjoyment of the Nelson Property by the following:

    a.     Textron allowed hazardous substances to be released into the soil and groundwater at the Site such that the Contaminants migrated off-Site and impacted nearby properties, including the Nelson Property. Those actions

          included, but not limited to, the release, discharge, and/or disposal of 1) process water into an outdoor waste pond and 2) hazardous substances from facility equipment, both of which were not equipped with safeguards to prevent the release, discharge, or escape of said substances, including the Contaminants; and Textron also failed to implement protective measures to prevent Contaminants from migrating from the Site onto the Nelson Property;

    b.    Despite knowledge of the Contaminants on the Site for approximately twenty (20) years, Textron failed to undertake appropriate investigatory actions to determine the presence of the Contaminants off-Site, including on the Nelson Property, and to properly investigate the Contaminants' impact to the Nelsons' health, when Textron knew or should have known of the likelihood that the Nelson Property was contaminated and the Nelsons' health jeopardized;

    c.    For approximately twenty (20) years, Textron failed to warn the Nelsons that both the Nelson Property and the Nelsons' health were at risk due to the releases and disposal at the Site and the Contaminants' migration.

78.    Textron's grossly negligent conduct and its deliberate disregard for the health and safety of others constitutes malice, fraud, gross negligence, and/or oppressiveness which is not the result of a mistake of fact or law, honest error or judgment, over zealousness, mere negligence, or other human failing.

79.    The Nelsons have sustained actual damages due to Textron's acts and/or omissions, and consequently it would be reasonable and proper for the assessment of punitive

damages to deter Textron and all others similarly situated from acting in a similar manner in the future.

80. Textron's failure to investigate off-Site, failure to warn the Nelsons, disregard for the health and well-being of the Nelsons, and failure to implement safeguards to prevent the release and migration of the Contaminants constitute more than noniniquitous human failing.

81. The conduct of Textron was directed specifically at acquiring substantial wealth for itself at the expense of the rights of the Nelsons and others located near the Site. Textron's actions are contrary to acceptable norms of business and are in contravention of public policy. Accordingly, Textron should be subject to the imposition of exemplary and punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Nelsons request that this Court enter judgment in their favor and against Textron, and pray:

A. That the Court order Textron to take immediate action on the Site to prevent the continued migration of Contaminants off the Site, and to take immediate remediation action on the Nelson Property that will fully and completely cleanup the Contaminants, and to take immediate action to ensure the safety and health of the Nelsons with respect to the Contaminants, and to take immediate action to abate the nuisance;

B. That the Court order Textron to reimburse the Nelsons all costs, including pre-judgment interest, they have incurred relating to the Contaminants on the Nelson Property;

C. That the Court award the declaratory relief specified above;

D. That the Court order Textron to immediately provide hook-up to a municipal water system for the Nelsons' residential uses;

E. That the Court order Textron to provide future monitoring of the Nelson Property to ensure that no Contaminants, or other substances released by Textron, migrate onto the Nelson Property;

F. That the Court award the Nelsons the diminution in market value of the Nelson Property;

G. That the Court award the Nelsons compensatory and other appropriate damages in an amount to be determined at trial as a result of Textron's trespass, nuisance, negligence, and negligence per se, and Textron's violation of the Environmental Legal Action Statute;

H. That the Court assess punitive damages against Textron as a result of Textron's willful and wanton misconduct;

I. That the Court award the Nelsons their reasonable attorney fees, costs of this suit, and further relief the Court deems just and proper.

## JURY TRIAL DEMAND

The Nelsons hereby demand a trial by jury of their claims against Textron, Inc.

        Respectfully submitted,

        **STEWART & IRWIN, P.C.**

        By    *s/Nicholas K. Gahl*
              Glenn D. Bowman (Atty. No. 4085-49)
              gbowman@silegal.com
              Mary F. Schmid (Atty. No. 17442-49)
              mschmid@silegal.com
              Nicholas K. Gahl (Atty. No. 27842-49)
              ngahl@silegal.com
              251 East Ohio Street, Suite 1100
              Indianapolis, Indiana  46204
              Phone:  (317) 639-5454
              *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

     I hereby certify that on July 30, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system:

Frank J. Deveau
fdeveau@taftlaw.com
William C. Wagner
wwagner@taftlaw.com
Bradley R. Sugarman
bsugarman@taftlaw.com
David L. Guevara, Jr.
dguevara@taftlaw.com
Thomas F. O'Gara
togara@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**
One Indiana Square, Suite 3500
Indianapolis, Indiana  46204

*Attorneys for Textron, Inc.*

              *s/Nicholas K. Gahl*

si278160